UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO: 7:16-CV-296-BR

| | |
|---|---|
| DENISE FOWLER, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| CITY OF WILMINGTON, | ) |
| a North Carolina Municipality, | ) |
| CITY OF WILMINGTON | ) ORDER |
| COLLECTIONS DEPARTMENT, | ) |
| MAYOR BILL SAFFO, in his official capacity, | ) |
| CITY MANAGER STERLING CHEATHAM, | ) |
| in his official capacity, | ) |
| Defendants. | ) |

This matter is before the court on defendants City of Wilmington (the "City"), City of Wilmington Collections Department, Mayor Bill Saffo, and City Manager Sterling Cheatham's motion to dismiss. (DE # 18.) Plaintiff filed a response, (DE # 19), to which defendants filed a reply, (DE # 20). This matter is ripe for disposition.

## I. BACKGROUND

In August 2015, plaintiff Denise Fowler's neighbor, who has been in an on-going dispute with plaintiff, (Am. Compl., DE # 17 ¶ 11), made a complaint to the Wilmington Police Department, (id. ¶ 12), claiming plaintiff "had sounded her automobile horn for a reason other than a warning or danger signal," (id. ¶13). A member of the Wilmington Police Department issued plaintiff a "Civil Citation Noise Violation." (Id. ¶ 14.) The officer was not present to witness the horn blast. (Id. ¶ 15.) The citation was for a violation of Wilmington City Code § 6-29, (id. ¶ 16), and stated that the penalty must be paid within ten days of the citation and "'the

city may seek to recover the penalty by filing a civil action in the nature of debt,'"[1] (id. ¶ 17 (quoting Ex. 2-A, DE # 17-3)). Plaintiff went to the city collection department to request information on how to appeal the citation, (id. ¶ 18), but "was told there was no appeal provision," (id. ¶ 19). Plaintiff was also told that if she failed to pay, the City would obtain a judgment against her requiring her to pay the penalty as well as other costs associated with the action. (Id. ¶ 21.) Plaintiff subsequently received two bills from the City, one in September 2015 and one in December 2015, informing her she owed $250.00. (Id. ¶¶ 24-25.) Plaintiff, fearful that a lawsuit would negatively affect her credit or have other "lasting effects on her good name," (id. ¶ 27), remitted $250.00 to the City, (id. ¶ 29). Plaintiff asserts a violation of her due process rights under the United States and North Carolina Constitutions and seeks the recovery of nominal, compensatory, and punitive damages. (Id. at 5 ¶¶ 2-4.)

## II. DISCUSSION

Rule 12(b)(6) allows a claim to be dismissed if the plaintiff fails to "state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is meant to test the sufficiency of a complaint rather than resolving any disagreements "surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In considering a 12(b)(6) motion, "[the court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted).

---

[1] The section of the Wilmington City Code that plaintiff purportedly violated provides "[n]o person shall engage in any of the enumerated activities so as to cause a noise disturbance on neighboring premises. . . . [s]ounding of any automobile horn except as a warning or danger signal." Wilmington, N.C., Code of Ordinances § 6-29 (2017). The civil penalty for a first-time violation of this Code section is $250.00. Id. § 6-1(b)(2)a. "If a person fails to pay a civil penalty within ten (10) days after being cited for a violation, the city may seek to recover the penalty by filing a civil action in the nature of a debt." Id. § 6-1(b)(4).

2

Defendants contend that the City of Wilmington Collections Department is not a legal entity and cannot be sued. (Defs.' Mem. Supp. Mot. Dismiss, DE # 19, at 3.) The capacity to be sued is determined "by the law of the state where the court is located . . . ." Fed. R. Civ. P. 17(b)(3). North Carolina courts have held that "component parts" of a city "lack the capacity to be sued." Jones v. City of Greensboro, 277 S.E.2d 562, 576 (N.C. Ct. App. 1981), overruled on grounds by Fowler v. Valencourt, 435 S.E.2d 530 (N.C. 1993). Plaintiff's own allegations recognize that the City of Wilmington Collections Department is "a subdivision of the City of Wilmington . . . ," (Am. Compl., DE # 17, ¶ 3), and plaintiff does not respond to defendants' argument. The court agrees that because it is does not have the capacity to be sued, the City of Wilmington Collections Department should be dismissed from the case.

Defendants further contend Mayor Bill Saffo and City Manager Sterling Cheatham should be dismissed from the case because plaintiff has made no allegations against either party. (Defs.' Mem. Supp. Mot. Dismiss, DE # 19, at 3-4.) Plaintiff does not respond to this argument. The court agrees that both Mayor Bill Saffo and City Manager Sterling Cheatham, who are sued only in their official capacities, should be dismissed from the case because plaintiff states no claim against them separate and apart from her claims against the City. See J.S. ex rel. Duck v. Isle of Wight Cty. Sch. Bd., 368 F. Supp. 2d 522, 527 (E.D. Va. 2005) ("A § 1983 lawsuit brought against an individual in his official capacity is [] duplicative of a claim brought against the municipality." (citations omitted)); Moore v. City of Creedmoor, 481 S.E.2d 14, 21 (N.C. 1997) ("[W]here the governmental entity may be held liable for damages resulting from its official policy, a suit naming public officers in their official capacity is redundant." (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)).

As to the City, plaintiff asserts she has been denied procedural due process as guaranteed by the United States Constitution and the North Carolina Constitution. "North Carolina courts have consistently interpreted the due process . . . clause[] of the North Carolina Constitution as synonymous with [its] Fourteenth Amendment Counterpart[]." Tri Cty. Paving, Inc. v. Ashe Cty., 281 F.3d 430, 435 n.6 (4th Cir. 2002) (citations omitted). The United States Constitution provides that the state shall not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV.

> At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard. Notice and the hearing are two distinct features of due process, and are thus governed by different standards. Proper notice is "an elementary and fundamental requirement of due process," and must be reasonably calculated to convey information concerning a deprivation.

Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 146 (4th Cir. 2014) (citations omitted).

While the parties' briefs primarily concentrate on the "opportunity to be heard" aspect of due process, (DE # 19; DE # 20.), the court believes the focus should be directed at whether the content of the notice provided to plaintiff was adequate to inform her of the opportunity to be heard. In determining the sufficiency of notice, "notice satisfies due process where it either 1) 'is in itself reasonably certain to inform those affected' or 2) 'where conditions do not reasonably permit such notice, . . . the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.'" Snider, 739 F.3d at 146 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950)). It is not necessary that the notice be actual, id., but the "timing, content of the notice and the form of the hearing will depend upon a proper balancing of the competing interests involved," Garraghty v. Jordan, 830 F.2d 1295, 1300 (4th Cir. 1987) (citing Goss v. Lopez, 419 U.S. 565, 579 (1975)); see also Mallette v.

4

Arlington Cty. Emps.' Supplemental Ret. Sys. II, 91 F.3d 630, 640 (4th Cir. 1996) ("[D]ue process has no fixed content; it is 'flexible and calls for such procedural protections as the particular situation demands.'" (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972))). "[W]hen notice is a person's due, process which is a mere gesture is not due process." Mullane, 339 U.S. at 315.

In the present case, notice of the opportunity to be heard was presented to plaintiff in one sentence at the bottom of the citation which duplicates the enforcement section of the Wilmington City Code. (Am. Compl., Ex. 1, DE # 17-1.) The sentence reads; "This penalty must be paid within ten (10) days after being cited for a violation, [sic] the city may seek to recover the penalty by filing a civil action in the nature of debt." (Id.). See also Wilmington, N.C., Code of Ordinances § 6-1(b)(4) (2017). The content of this notice arguably is ambiguous and vague and not "reasonably certain to inform those affected." Snider, 739 F.3d at 146. Plaintiff's amended complaint makes clear that it was not apparent to her that the City's ability to bring "a civil action in the nature of debt" for failure to pay the penalty presented her with opportunity to dispute the allegations against her.

When plaintiff reached out to City employees to discover how she could contest the allegations, she was told "there was no appeal provision provided for in the Wilmington City Code . . .," (Am. Compl., DE # 17, ¶ 19), and "was then told if she did not pay the monies that the City *would obtain a judgment* against her for said monies and other costs associated with that action," (id. ¶ 21 (emphasis added)). This language, as well as the actual language of the citation, seems to indicate that the action to collect the debt is a formality and not in fact an opportunity to dispute the allegations. See Mallette, 91 F.3d at 640-41 (holding that notice given to the plaintiff that she would have to argue her retired job connected disability claim in order to

5

have it converted from her existing worker's compensation was such that she "could not have understood the adverse nature of the hearing, could not have adequately evaluated her need for counsel, and could not have prepared appropriate rebuttal evidence" in light of representations made to her by the County personnel).

Plaintiff continued to request "to be heard on the noise violation and was again denied . . . ." (Am. Compl., DE # 17, ¶ 23.) Following the receipt of two bills to collect the money, (id. ¶¶ 24-25), she then "became increasingly fearful that the City of Wilmington would sue her," (id. ¶ 26), and that "the lawsuit would ruin her credit and have other long lasting effects on her good name," (id. ¶ 27). "After attempting to gain a hearing and being denied a hearing on whether a violation had in fact occurred, the Plaintiff relented to the City's collection efforts." (Id. ¶ 28.) Plaintiff does not allege that at any time was her opportunity to be heard conveyed to her. To the contrary, her repeated attempts to obtain a hearing and avoidance of the fine indicate that she was not aware of the procedure to contest the penalty.

Therefore, the allegations viewed in a light most favorable to plaintiff raise legitimate concerns about the sufficiency of the content of the notice, specifically whether it was reasonably expected to inform an individual facing liability of the procedure for contesting the penalty. Viewed in this context, plaintiff has sufficiently stated a claim upon which relief may be granted.

### III. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants City of Wilmington Collections Department, Mayor Bill Saffo, and City Manager Sterling Cheatham are DISMISSED. Plaintiff's claims against the City

remain.

This 14 June 2017.

_____

W. Earl Britt

Senior U.S. District Judge